## NORRIS, GUARD., *v.* TOWLE, ADM'R.

An administrator under General Statutes, chapter 177, section 10, who is indebted to the intestate, is bound to account for the whole debt.

Whether it is open to his sureties to show that he was insolvent at the time of his appointment, and so continued afterward, *quære?*

APPEAL, by Jonathan P. Norris against Levi Towle, from a decree of the judge of probate, made on the settlement of the account of said Towle as administrator of the estate of Gilman Corliss, late of Meredith, deceased, the appellant being the guardian of the minor and only heir of the estate of the deceased. The parties agree upon the following facts: Corliss died in April, 1866, and Towle was appointed

administrator on his estate in May after.   Some time in March of the
same year Towle gave to Corliss his note for $300, payable on demand
with interest annually, which note was due and unpaid at the time
Corliss died, and went into the hands of Towle as administrator.   At
the time Towle was appointed administrator he had unincumbered real
estate to the value of $3,000, and personal property unincumbered to
the value of $2,000, all of which real and personal property remained
unincumbered for more than two years, the personal property never
having been mortgaged.   Towle afterwards became insolvent, and at
about the time he was cited in to settle his account in May, 1872, as
administrator, he applied for the benefit of the bankrupt act.  The judge
of probate in his decree charged him with one half of the amount due
on the note.   His estate in bankruptcy did not pay 50 per cent. of his
debts.   If, in the opinion of the court, the question of Towle's solvency
or insolvency at the time he was appointed administrator should be
deemed material, this case is to be discharged.

*Vaughan*, for the appellant.

*C. F. Stone*, for the appellee.

ISAAC W. SMITH, J.   The administrator should have been charged
for the full amount of his note to the intestate.  No part of it had ever
been paid or released or otherwise discharged, and we are unable to see
upon what principle he was only charged for fifty per cent. of the amount
due upon it.   The fact that his estate in bankruptcy paid a dividend of
less than fifty per cent. is of no consequence.   If the plaintiff, to whom
as guardian of the minor child and sole heir of the appellee's intestate
the sum found in the hands of the appellee as administrator upon set-
tlement of his account is payable, should desire to prove the claim in
bankruptcy against the estate of the bankrupt, he should be in a posi-
tion to prove it for the full amount due, otherwise he would receive
only a dividend upon a dividend.   And this is also for the benefit of
Towle's sureties upon his administration bond, in case they are holden
to pay for his default.

That the administrator should be charged for the amount of his in-
debtedness to the intestate has been repeatedly settled in Massachusetts.
*Winship* v. *Bass*, 12 Mass. 203, 205; *Sigourney* v. *Wetherell*, 6 Met.
558; *Stevens* v. *Gaylord*, 11 Mass. 269, 271; *Ipswich Manufacturing
Co.* v. *Story*, 5 Met. 313; *Kinney* v. *Ensign*, 18 Pick. 236; *Benchley*
v. *Chapin*, 10 Cush. 176; *Leland* v. *Felton*, 1 Allen 535; *Mattoon* v.
*Cowing*, 13 Gray 387 ;—and the same rule is laid down in *Shelley's case*,
1 Salk. 296.

In *Winship* v. *Bass*, the reason is said to be that the administrator,
having voluntarily assumed the trust, which prevents any other from
receiving the debt, and being unable to sue himself, he shall be consid-
ered as having paid the debt, and as holding the amount in his hands
as administrator; and the debt being considered as received, the admin-
tr ator and his sureties are therefore accountable.

In *Stevens* v. *Gaylord*, it is said that as soon as the debtor is appointed administrator, if he acknowledges the debt, he has actually received so much money, and is answerable for it. As the same hand is to receive and to pay, there is no ceremony to be performed in paying the debt, and no mode of doing it but by considering the money to be in the hands of the party in his character of administrator. And in *Ipswich Manufacturing Co.* v. *Story* the court say it is the only mode in which payment could be made. The old rule, that a testator by making a debtor his executor released his debt, has never been in force here. *Ipswich Manufacturing Co.* v. *Story*.

SHAW, C. J., in *Benchley* v. *Chapin*, remarks,—" Whether, if a debtor to the estate of an insolvent should accept the office of the assignee through inadvertence or mistake of the law (that he is chargeable with the full amount of his debt), or if by losses occurring afterwards should become in fact insolvent, he might be allowed to resign and enable the creditors to choose another assignee to act as their representative in collecting such debt of the assignee who has resigned, it is unnecessary to consider, for no such question is presented. Perhaps such a course might upon a proper cause shown be deemed equitable and reasonable, especially when necessary for the relief of the sureties of the assignee."

Benchley and Jackson were indebted to John Leland in the sum of $2,576.66, secured by mortgage. Leland became insolvent, and Benchley was appointed his assignee. As such he sold at auction the note and mortgage from his firm to Leland for $1,250, and charged himself with that sum. But the commissioner of insolvency charged him with the full sum due—$2,576.66—from which Benchley appealed.

SHAW, C. J., in delivering the opinion of the court, remarked as follows: "As a general rule of law, when the same person is bound to pay money in one capacity, and it is his duty to recover it and account for it in another, as he cannot pay himself, the law presumes that he has done what it was his duty and in his power to do, and holds him chargeable as if actually done. The rule is not founded on any statute or positive rule of law, but almost necessarily arises out of the exigencies of the case. The assignee can take no measures to enforce the payment of a debt, due by himself as debtor, to himself as assignee. Knowing that he is debtor when he assumes the trust and office of assignee, his assent to charge himself with the amount of his debt is tacitly admitted by the acceptance of the office."

There has been no disposition by the supreme court of Massachusetts to relax the rule as laid down in the earlier cases in that state.

In *Leland* v. *Felton*, 1 Allen 535, it is held that " debts due the estate of the testator from the executor named in his will, and from a firm of which he is a member, are to be treated and accounted for as assets, although he and his firm were insolvent at the time when he accepted the trust, and although he has never charged them in his account, and an account has been allowed in which they were not included, but were mentioned as notes which it had been impossible to

collect, and although he has resigned his trust and an administrator *de bonis non* has been appointed in his place."

*Mattoon* v. *Cowing*, 13 Gray 387, was a suit upon a guardian's bond in the name of the judge of probate against the sureties, the principal having died, where it was held that "a guardian is responsible on his general bond for money due from him to his ward at the time of his appointment and for the rent of the real estate occupied by the guardian before that time," and the sureties were held liable ; and all the Massachusetts cases, where the liability of the sureties is at all mentioned, would seem to hold them equally liable with the principal, except that in *Benchley* v. *Chapin* it is intimated that the assignee in insolvency might be permitted to resign if upon proper cause shown such a course should be deemed equitable and reasonable, especially for the relief of the sureties, but, considering the reasoning of the court in all the cases, such a course would only be permitted when the estate would not have been in any better condition if some person not a debtor to the estate had been originally appointed.

In *Smith* v. *Jewett*, 40 N. H. 513, it was held that if an executor permit his wife to appropriate money belonging to the testatrix, such appropriation becomes his own act, and makes him chargeable for the money upon his administration bond.

In *Wheeler* v. *Emerson*, 44 N. H. 182, it was held that a surety upon the principal's administration bond is entitled to hold mortgages assigned to him by the principal to indemnify him for his liabilities on account of the principal, the principal having been charged by a decree of the probate court for a balance due from the principal to the deceased in his lifetime.

A debt due from the administrator to the estate shall be assets, and accounted for as other debts.   Gen. Stats., ch. 177, sec. 10.

All debts due to the estate, which by due diligence might have been collected, shall be accounted for in money.   Gen. Stats., ch. 177, sec. 8.

The case does not find whether Towle included his note in the inventory which he returned to the probate court.   It is probable that it was. It is not material, however, whether he did or not, as, by sec. 4 of ch. 177 of Gen. Stats., all assets, though not inventoried, shall be accounted for, and the administrator charged therewith in the account of administration.   In the agreed case, there is no denial that Towle is liable upon his note.   It is not claimed that he ever paid it, or that there was any infirmity in the consideration or execution thereof.   In the absence of any suggestion to the contrary, we must presume that it was valid in all respects.   There is no suggestion that it is barred by a discharge in bankruptcy ; and from the fact that his estate paid a dividend of less than fifty per cent., no discharge in bankruptcy could be decreed to him, except by the assent of a majority in number and value of his creditors who proved their claims, which it is not claimed that he received ;—*vide* Bankrupt Act of 1867, sec. 33, as amended by the acts of July, 1868, and July 14, 1870.   At the time of his appointment he

had unincumbered real and personal estate to the amount of $5,000, and which remained so for more than two years. He did not become insolvent for more than two years after his appointment as administrator. If the note had been the debt of some other person, in similar circumstances as to property, instead of his own, there could have been no reason why he should not have collected it. It would have amounted to a *devastavit* if he had not, and he would have been charged with it, under the provisions of sec. 8, ch. 177, Gen. Statutes—"All debts due to the estate, which by due diligence might have been collected, shall be accounted for in money;"—or, suppose some third person had been appointed administrator instead of Towle: would there have been any reason why he should not have collected the note of Towle, or that he would be compelled to account for it in money if he had neglected to collect it? Upon what principle, then, can this defendant stand any better in regard to this note, because he accepted the trust of administrator and thereby prevented any other person from receiving the debt? He could not sue himself, and therefore he must be considered in law as having paid the debt and as holding the amount in his hands as administrator; and being rightfully charged, the sureties upon his administration bond would be rightfully held. *Wheeler* v. *Emerson*, 44 N. H. 172.

One further question raised in the agreed case remains to be considered, viz., whether the question of Towle's solvency or insolvency at the time he was appointed administrator is material. So far as Towle is concerned, we are of the opinion that it makes no difference whether he was solvent or insolvent at the time he received his letters of administration. If he was solvent, he must be charged with the amount of this note as assets in his hands belonging to the estate, and his sureties would be held. If insolvent, he is equally chargeable. The provision of the statute—Gen. Stats., ch. 177, sec. 10—that a debt due from the administrator to the estate shall be assets, and accounted for as other debts, could otherwise be but partially enforced, and should be amended by adding the words "provided he is solvent." It is true, that section 9 provides that a debt due from an insolvent person may be compromised and discharged on payment of such part thereof as the administrator deems proper, and the administrator shall be chargeable only for the amount received, and that section 10 provides that the judge of probate shall liquidate and adjust all debts and claims due to the administrator, or from him to the estate. It will not be claimed that by force of the 9th section the administrator can compromise a claim against himself; and in the 10th section we think the words "liquidate and adjust" mean the same as "find or ascertain" what is due from and to the administrator, where there is a controversy as to whether there be such debt, or as to the amount, or as to the facts and circumstances attending the debt or claim. If the legislature had intended to give the judge power to *compromise* a claim against the administrator in case of his inability to pay in full, they would most probably have used such language as would have left no doubt upon

the subject.    In the 9th section the language is, "may be compromised and discharged;" in the 10th section, "shall liquidate and adjust." If the section had read, "shall liquidate and adjust, *or compromise*," there would be no room for doubt upon the subject.    Whether it is open to the sureties to show that the claim of the estate against the administrator was ever since his appointment of no value by reason of his insolvency was not before the court in *Wheeler* v. *Emerson*, and was not decided, and that question is not before us now and need not be considered.    In *Harker* v. *Irick*, 2 Stockt. Ch. 269 (N. J.), and *Piper's estate*, 15 Pa. St. 533, and *Gottsberger* v. *Smith*, 5 Duer 566, that question was decided in favor of the sureties.    In *Kinney* v. *Ensign*, 18 Pick. 236, as we have seen, it is intimated that under some circumstances the sureties might be entitled to relief, but that question was then not before the court and was not considered.

*Decree reversed.*